UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORETTA STREICHERT,

                                    Plaintiff,

                    -against-

TOWN OF CHESTER, NEW YORK; ALEX
JAMIESON; ROBERT VALENTINE,
*Supervisor, Town of Chester*; CYNTHIA
SMITH, *Town of Chester Board Member*;
RYAN C. WENSLEY, *Town of Chester Board
Member*,

                                    Defendants.

19-CV-7133 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

        Plaintiff Loretta Streichert ("Plaintiff") brings this Action under 42 U.S.C. § 1983,

alleging that Defendants Town of Chester (the "Town"), Alex Jamieson, Robert Valentine,

Cynthia Smith, and Ryan C. Wensley (collectively, "Defendants") "engaged in intentional

gender discrimination in violation of the Equal Protection clause of the Fourteenth Amendment."

(Compl. ¶ 45 (Dkt. No. 1).)  Before the Court is Defendants' Motion To Disqualify Plaintiff's

Counsel, Michael H. Sussman ("Sussman").  (*See* Not. of Mot. (Dkt. No. 31).)

I.  Background

        Plaintiff brought the underlying action on July 31, 2019, alleging that Defendants paid

her less than a similarly situated male employee, Walter Popailo ("Popailo").  (Compl. ¶¶ 26,

44.)  Popailo led the Town of Chester's Parks and Recreation Department until April 2017, when

he was terminated after allegedly making offensive remarks captured on video.  (*Id.* ¶¶ 19, 24.)

Although Plaintiff assumed Popailo's role as head of the Parks and Recreation Department, she

alleges that Defendants "did not provide her with the title . . . or salary accorded Popailo in the

same position."  (*Id.* ¶ 26.)  In 2019, the Town selected Popailo as Recreation Director for the

Sugar Loaf Performing Arts Center ("Sugar Loaf"), a position for which Plaintiff had also

applied.  (*Id.* ¶¶ 33, 37.)  In light of her "unsullied employment record and [] superior

qualifications," Plaintiff argues, this position should have gone to her.  (*See id.* ¶ 41.)  Plaintiff

claims that by paying her less than Popailo, and then passing her over for the Sugar Loaf position

in favor of Popailo, Defendants committed intentional gender discrimination in violation of the

Fourteenth Amendment's Equal Protection clause.  (*Id.* ¶¶ 44–45.)

Defendants filed their Answer on September 23, 2019, (Dkt. No. 23), and, four days later,

the case was automatically referred to the Southern District of New York's Alternative Dispute

Resolution program, (*see* Dkt. No. 24).  A mediation conference held on May 28, 2020 failed to

produce a resolution.  (*See* Dkt. (minute entries for May 8, 2020); Dkt. No. 27.)

Two weeks later, Defendants filed a letter with the Court seeking leave to disqualify

Plaintiff's counsel, Michael H. Sussman.  (*See* Letter from Cristina A. Knorr, Esq., to Court

(June 12, 2020) ("June 12 Knorr Letter") (Dkt. No. 28).)  Counsel for Defendants averred:

> Recently, it was brought to our attention by Town employees, that after Mr. Popailo
> was terminated by the Town, he had an in-person consultation with Mr. Sussman
> about the termination and a potential lawsuit against the Town as a result.  Ultimately,
> Mr. Sussman declined to take Mr. Popailo's case.  However, the termination of Mr.
> Popailo is being relied upon by the plaintiff in the instant action to establish her claims
> against the defendants.  In addition, the plaintiff's claims rest on her comparison to
> Mr. Popailo.

(*Id.* at 1.)  Relying principally on Rule 1.18 of the New York Rules of Professional Conduct,

which governs an attorney's obligations to prospective clients, Defendants argue that Sussman

has a conflict of interest and must be disqualified.  (*Id.*)[1]  The crux of Defendants' theory is that

---

[1] Rule 1.18 provides in relevant part that "[e]ven when no client-lawyer relationship
ensues, a lawyer who has learned information from a prospective client shall not use or reveal
that information, except as Rule 1.9 would permit with respect to information of a former client."
N.Y. Rule of Prof'l Conduct 1.18(b).  Moreover, a lawyer subject to this limitation "shall not
represent a client with interests materially adverse to those of a prospective client in the same or

by consulting with Popailo, a prospective client, Sussman obtained confidential and potentially harmful information that he can now use against Defendants.  (*See id.* at 3 (arguing that "[t]he facts of [Popailo's] termination, as well as [his] employment history with the Town, are facts and information that are not only potentially relevant to this matter but are being relied upon by [] [P]laintiff to establish her claims").)

Sussman responded by letter dated June 18, 2020.  (*See* Letter from Michael H. Sussman, Esq., to Court (June 18, 2020) ("June 18 Sussman Letter") (Dkt. No. 29).)  In his letter, Sussman acknowledges that Popailo came to him as a prospective client shortly after Popailo's termination from the Parks and Recreation Department.  (*See id.* at 1–2.)  In particular, Sussman asserts that he and Popailo "exchanged several emails" and met at Sussman's home on May 3, 2017.  (*Id.*)  However, Sussman denies having received information that could be "significantly harmful" to Popailo in the instant matter and asserts that Popailo "made no admissions" to him. (*See id.* at 3.)

After the Court allowed Defendants to proceed with their proposed motion, (*see* Dkt. No. 30), Defendants filed their Motion To Disqualify Counsel and related papers on July 17, 2020, (*see* Dkt. No. 31).  In a supporting affidavit, Popailo asserts that during his conversations with Sussman, which Popailo "believed were confidential and protected by attorney-client privilege, [he] did provide information to [Sussman] that was not public knowledge," which information "now . . . may be relevant to [] [P]laintiff's action."  (Aff. of Walter Popailo ("Popailo Aff.") ¶ 2 (Dkt. No. 31-5).)  Popailo also notes that, "[h]ad [he] been asked to consent [to] or waive

---

a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter."  N.Y. Rule of Prof'l Conduct 1.18(c).

attorney-client privilege, [he] would have declined," because "it was [his] understanding that

[their] conversations were confidential and would not be shared with any third parties, including

[] Plaintiff in this [A]ction." (*Id.* ¶ 3.)

Sussman disputes Popailo's characterization. In his opposition brief, submitted on

August 17, 2020, Sussman maintains that he did not "obtain any 'privileged information' – not

otherwise publicly available – from his meeting with Popailo in May 2017," and argues that

"defendants have not identified any information which [he] could use or reveal which is distinct

from the public record available." (Pl.'s Mem. of Law in Opp. to Defs.' Mot. To Disqualify

Counsel ("Pl.'s Mem.") 4 (Dkt. No. 32).) In a supporting declaration, Sussman again notes that

"Popailo made no admissions concerning his conduct," and further clarifies that he "had no

discussion with Popailo about any salary discrepancy or discrimination issues." (Decl. of

Michael H. Sussman in Supp. of Pl.'s Mem. ("Sussman Decl.") ¶¶ 4–5 (Dkt. No. 33).)

## II.  Discussion

A court charged with resolving a motion to disqualify "must consider the factual record

underlying such a motion in detail to determine whether the party seeking disqualification has

sustained the high standard of proof necessary to disqualify opposing counsel." *Capponi v.

Murphy*, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) (citation omitted). "[T]he conclusion in a

particular case," courts have emphasized, "can be reached only after painstaking analysis of the

facts." *HLP Props., LLC v. Consol. Edison Co. of N.Y., Inc.*, No. 14-CV-1383, 2014 WL

5285926, at *5 (S.D.N.Y. Oct. 16, 2014) (quoting *Fund of Funds, Ltd. v. Arthur Anderson &

Co.*, 567 F.2d 225, 227 (2d Cir. 1977)); *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ.

Holdings LLC*, 366 F. Supp. 3d 567, 572 (S.D.N.Y. 2019); *see also Xiao Hong Liu v. VMC E.

Coast LLC*, No. 16-CV-5184, 2017 WL 4564744, at *3 (E.D.N.Y. Oct. 11, 2017) (observing that

courts undertaking such an analysis "must proceed with care").  Where a court is presented with incomplete or conflicting factual assertions, it may instruct the parties to provide additional information for the court's *in camera* review.  *See Benevida Foods, LLC v. Advance Magazine Publishers Inc.*, No. 15-CV-2729, 2016 WL 3453342, at *2 (S.D.N.Y. June 15, 2016).  A court may also instruct the parties to appear for an evidentiary hearing to resolve contested issues of fact.  *See id.* at *1 (observing that, "[a]fter reviewing [the parties'] submissions, [] this [c]ourt determined that there were credibility issues that could not be resolved without an evidentiary hearing"); *Miness v. Ahuja*, 713 F. Supp. 2d 161, 166 (E.D.N.Y. 2010) (ordering the parties to appear for an evidentiary hearing "[g]iven the divergence in [their] description of the relevant events," and noting that the disqualification motion "rests of [sic] issues of disputed fact"); *Zalewski v. Shelroc Homes, LLC*, 856 F. Supp. 2d 426, 427–28 (N.D.N.Y. 2012) ("After reviewing the extensive submissions by both parties, . . . this [c]ourt found substantial disagreement between the parties as to the core facts and events, and concluded that the difference cannot be overcome without further fact finding." (alteration, citation, and internal quotation marks omitted)).

Here, the Court's resolution of the instant dispute rests on contested issues of fact.  First, there is a dispute whether Popailo disclosed *any* confidential information to Sussman over the course of their preliminary consultation.  Although Popailo asserts that he "did provide information to [Sussman] that was not public knowledge," (Popailo Aff. ¶ 2), Sussman claims he did not obtain any information that was "not otherwise publicly available [] from his meeting with Popailo in May 2017," (Pl.'s Mem. 4).[2]  Second, insofar as Sussman may have received

---

[2] Even if the Court credits Sussman's assertion that no confidential information was disclosed at the May 2017 meeting, (*see* Pl.'s Mem. 4), Sussman and Popailo still exchanged several emails in which confidential information could have been disclosed, (*see* June 18

confidential information, thus bringing him under the purview of Rule 1.18(b), there appears to be a dispute as to whether such information could be "significantly harmful" to Popailo so as to trigger Rule 1.18(c).  *See* N.Y. Rule of Prof'l Conduct 1.18(b)–(c).[3]  Sussman claims he "received no information from Walter Popailo that could be significantly harmful to him in this matter."  (June 18 Sussman Letter 3.)  Defendants disagree.  (*See* Defs.' Mem. of Law in Supp. of Motion To Disqualify Counsel ("Defs.' Mem.") 5–6 (Dkt. No. 31-2) (arguing that "allowing Mr. Sussman to question and/or cross-examine Mr. Popailo on information discussed and divulged during their confidential consultation would be unfair"); Defs.' Reply Mem. in Further Supp. of Motion To Disqualify Counsel ("Defs.' Reply") 3 (Dkt. No. 34) (same).)

Given the "divergence in the parties' description of the relevant events here," *Miness*, 713 F. Supp. 2d at 166, Popailo and Sussman should submit supplemental affidavits for the

---

Sussman Letter 1–2).  Moreover, although Sussman repeatedly emphasizes that the assertions in Plaintiff's Complaint were derived entirely from publicly available sources, (*see* June 18 Sussman Letter 3 ("All of the information relating to Mr. Popailo and used in the Complaint was a matter of public record . . . ."); Pl.'s Mem. 3–4 ("None of the[] allegations [in the Complaint] derived in any part or measure from any information Popailo told Sussman in May 2017 and each was by then part of the public record or had not occurred as of the time of such consultation and could not then have been discussed."); Sussman Decl. ¶¶ 6–7 (same)), and therefore contends that he has "not revealed confidential information either in drafting the Complaint or otherwise," (June 18 Sussman Letter 3), the prohibition in Rule 1.18(c) applies to "lawyer[s] subject to paragraph (b)," that is, "lawyer[s] who ha[ve] *learned* information from a prospective client," N.Y. Rule of Prof'l Conduct 1.18(b)–(c) (emphasis added); *see also* N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 960 ¶ 5 (Feb. 26, 2013) ("The protection afforded to prospective clients under Rule 1.18(c) is contingent upon the lawyer's *receipt* of confidential information." (emphasis added)); N.Y. City Bar Ass'n Prof'l Ethics Comm., Formal Op. 2013-1: Duties to Prospective Clients After Beauty Contests & Other Preliminary Meetings 3–4 (Jan. 1, 2013) (observing that "information *learned* in a consultation with a prospective client is subject to the restriction in [Rule 1.18(b)] only if it is 'confidential information,'" and noting that "[t]he restriction on adverse representation in [Rule 1.18(c)] applies *only if the lawyer is subject to the information restriction* in paragraph (b)" (emphases added)).  Thus, Sussman's contention that he has not *revealed* confidential information is something of a red herring; the Court must determine whether he *received* confidential information in the first place.

    [3] The Court reserves judgment on whether Rule 1.18(c)'s other requirements—(i) materially adverse interests in (ii) the same or a substantially related matter—are satisfied.

Court's *in camera* review.  Specifically, the Court directs Popailo to identify with particularity (i) any and all confidential or privileged information he disclosed to Sussman, and (ii) what information, if any, could be "significantly harmful" to him in the instant matter.  The Court will give little weight to vague, unsubstantiated assertions that non-public information was disclosed. (*See* Popailo Aff. ¶ 2.)  In addition to identifying any confidential and significantly harmful information, Popailo is instructed to provide the Court with any extant copies of emails between him and Sussman, as well as any contemporaneous notes from telephone conversations or meetings with Sussman.  Although Sussman has already purported to disclose the full contents of his discussions with Popailo, (*see* June 18 Sussman Letter 2), he is nevertheless invited to file an affidavit supplementing his earlier proffers and addressing any issues raised in this Order.  He, like Popailo, is also instructed to provide the Court with any extant copies of emails between him and Popailo, as well as any contemporaneous notes from telephone conversations or meetings with Popailo.  Both Sussman and Popailo are directed to file unredacted submissions to the Court under seal, which the Court will review *in camera*, and to provide redacted versions of these submissions for public filing.  Sussman and Popailo will have two weeks to comply with this Order.  After reviewing Sussman and Popailo's submissions, the Court will determine whether an evidentiary hearing is necessary.

### III.  Conclusion

Accordingly, it is hereby

**ORDERED** that Walter Popailo submit a supplemental affidavit identifying any confidential information he disclosed to Michael Sussman, along with any information that could be significantly harmful to him in the instant matter.  Popailo is also ordered to submit any emails between him and Sussman, as well as any contemporaneous notes from telephone

conversations or meetings with Sussman.  Popailo shall file these submissions with the Court no later than October 27, 2020.  It is further

ORDERED that Michael Sussman likewise submit any emails between him and Popailo, as well as any contemporaneous notes from telephone conversations or meetings with Popailo. Sussman may also submit an affidavit supplementing the information he has already provided to the Court and addressing any issues raised in this Order.  Sussman shall file these submissions with the Court no later than October 27, 2020.

SO ORDERED.

Dated:    October 13, 2020
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge