UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORETTA STREICHERT,

                                        Plaintiff,

        v.

TOWN OF CHESTER, NEW YORK *et al.*,

                                        Defendants.

No. 19-CV-7133 (KMK)

OPINION & ORDER

Appearances:

Michael Howard Sussman, Esq.
Sussman & Associates
Goshen, NY
*Counsel for Plaintiff*

Sheel Patel, Esq.
Christina Soller, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Loretta Streichert ("Plaintiff") brings this Action under 42 U.S.C. § 1983,

alleging that the Town of Chester (the "Town"), former Town Supervisor Alex Jamieson

("Jamieson"), Town Supervisor Robert Valentine ("Valentine"), and Town Board Members

Cynthia Smith ("Smith") and Ryan C. Wensley ("Wensley"; collectively, "Defendants")

committed intentional gender discrimination in violation of the Equal Protection clause of the

Fourteenth Amendment.  (Compl. ¶¶ 44–45 (Dkt. No. 1).)

Before the Court is Defendants' Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 58).)  For the reasons outlined below, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendants' Statement Pursuant to Local Rule 56.1, (Defs.' Rule 56.1 Statement in Supp. of Mot. for Summ. J. ("Defs.' 56.1") (Dkt. No. 61)), Plaintiff's Opposition to Defendants' Statement Pursuant to Local Rule 56.1 (Pl.'s Rule 56.1 Statement in Opp'n to Mot. for Summ. J. ("Pl.'s 56.1") (Dkt. No. 63)), and are recounted "in the light most favorable to" Plaintiff, the non-movant, *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks omitted); *see also Johnson v. Kitt*, No. 15-CV-7823, 2021 WL 1105438, at *1 (S.D.N.Y. Mar. 23, 2021).

Plaintiff was employed by the Town from October 2006 to June 2019.  (Defs.' 56.1 ¶ 2.) Plaintiff was originally hired as a part-time Clerk for the Department of Parks and Recreation, the duties for which included answering the phone, taking messages, coordinating events, and assisting the Recreation Director with other tasks.  (*Id.*)  Plaintiff was paid on an hourly basis. (*Id.*)  Plaintiff's title was eventually changed to Recreation Coordinator after she passed a civil service exam.  (*Id.* ¶ 3.)  Plaintiff's responsibilities in this position included:

> assisting the [Town] [B]oard or [the Parks and Recreation [C]ommission in coordinating [] recreation program[s] or specific activities, . . .  assigning hours, work locations and activities to subordinate recreation staff[;] conducting public relation activities[;] keeping records of equipment, materials and supplies, inspecting equipment for safety and proper maintenance[;] maintaining discipline and enforcing regulations[;] and keeping records of recreation activities.

(*Id.* ¶ 10.)  In 2014, Plaintiff transitioned to working full time.  (*Id.* ¶ 6.)

Also in 2014, Walter Popailo ("Popailo") was hired as the new Recreation Director.  (*Id.* ¶ 4.)  The job description for the position of Recreation Director included the following responsibilities:

> planning, organizing, and directing [] recreation programs and activities, [including] planning athletic and sports activities . . . [and] scheduling and directing playground activities, dance programs, [and] arts and crafts . . . [;] preparing news releases and publicity[;] addressing community groups and performing other public relation functions[;] . . . maintaining control over equipment to ensure safe operating conditions[;] obtaining materials and supplies[;] and keeping records on finances, recreation activities, facilities, public relations, etc.

(*Id.* ¶ 10.)  In 2015, Popailo's position changed to full-time Recreation Director, after he passed a civil service exam.  (*Id.* ¶ 8.)  In 2017, Popailo was terminated from the position of Recreation Director.  (*Id.* ¶ 13.)  According to Defendants, Popailo was told that the Town Board "was moving in a different direction."  (*Id.*)  Popailo was also terminated due to improper or derogatory comments that he allegedly made during an Association of Towns meeting.  (*Id.*; Pl.'s 56.1 ¶ 13.)

After Popailo was terminated, the Parks and Recreation Department was split into two separate Departments: the Parks Department and the Recreation Department.  (*See* Defs.' 56.1 ¶ 14.)  In August 2017, Patrick Taggart ("Taggart") was selected to run the Parks Department, and Plaintiff was selected to run the Recreation Department.  (*Id.*)  Plaintiff notes that the Town Board "never created or approved the position of Grounds and Maintenance Supervisor and never passed a resolution splitting the Parks & Recreation Department," but she does not appear to dispute that, regardless of whether it was formally approved, after Popailo's termination, Plaintiff directed the Recreation Department and Taggart staffed the Parks Department.  (*See* Pl.'s 56.1 ¶ 14.)  Taggart was responsible for maintenance and repair of buildings and equipment, and his duties included "performing carpentry, plumbing, steam fitting, and

mechanical repairs, servicing electric motors and related electrical equipment, repairing various types of floors, and painting, repairing roofs, assisting with electrical wiring repairs, shoveling walkways, and operating a plow, and mowing the lawns." (Def.'s 56.1 ¶ 15.) Like Plaintiff, Taggart was paid hourly. (*Id.* ¶ 16.)

After the Department split, Plaintiff oversaw the Recreation Department, though she kept her title of Recreation Coordinator and her duties essentially remained the same, except that she also started overseeing the building of a new senior center. (*Id.* ¶ 19.) In 2018, Plaintiff requested that her title be changed to Recreation Director, and that request was granted. (*Id.* ¶ 20.) However, she remained an hourly employee despite her requests to become a salaried employee. (*Id.*)[1]

In 2019, the Town acquired the Sugar Loaf Performing Arts Center ("PAC"). (*Id.* ¶ 21.) Both Plaintiff and Popailo applied for the position of Recreation Director for the PAC. (*Id.*) Plaintiff and Popailo were both interviewed for the position, but ultimately Popailo was hired. (*Id.*) According to Defendants, Popailo was chosen for the position in part due to his relevant experience running a local comedy club for many years as well as his experience with and willingness to do maintenance and upkeep work. (*Id.* ¶ 24.) On June 3, 2019, Plaintiff resigned from her position as Recreation Director. (*Id.* ¶ 27.) Plaintiff stated in her resignation letter that she "felt undermined and could not make her own decisions." (*Id.*) Although Plaintiff does not dispute the contents of her resignation letter, she asserts that she "repeatedly complained" to Jamison about "gender bias by the Town and gender harassment by Popailo." (Pl.'s 56.1 ¶ 27.)

---

[1] Plaintiff purports to dispute that her title was changed, but she admits that, in the minutes of the January 2018 Town Board reorganization meeting, her title was listed as "Recreation Coordinator" but by January 2019, the Town Board reorganization meeting minutes list her title as "Recreation Director." (Pl.'s 56.1 ¶ 20.) This dispute is thus immaterial.

Plaintiff's salary history with the Town is as follows: in 2014, she was paid $18.49/hour. (Def.'s 56.1 ¶ 28.) In 2015, her salary increased to $23.99/hour. (*Id.*) In 2016, her salary increased again to $28.66/hour. (*Id.*) In 2017, her salary increased to $31.07/hour, and in 2018, it was increased again to $32.00/hour. (*Id.*) Finally, in 2019, when she left, Plaintiff earned $32.96/hour. (*Id.*) When Plaintiff initially became a full-time employee, she received 80% of her pay for her position, and she subsequently received 5% increases every six months until she reached 100% of her pay after two years. (*Id.* ¶ 6.)

According to Defendants, Popailo initially earned $36,235.60 per year when he was first hired in 2014. (*Id.* ¶ 29.) In 2016, Popailo's salary increased to $55,000 per year. (*Id.*) In 2017, he was earning $56,650.00 per year. Defendants state that, as with Plaintiff, these increases represented a 5% increase every six months until he reached 100% pay after two years. (*Id.* ¶ 5.) When he was rehired in 2019, he earned $26.37/hour. (*Id.*) According to Plaintiff, Popailo's base salary started at $41,389.00 in 2014, which represented 80% of his pay. (Pl.'s 56.1 ¶¶ 5, 29.) In January 2015, his salary increased to 85% of his pay with an additional 3% annual raise, which was standard for employees. (*See id.*) In June 2015, Popailo started receiving 90% of his pay. (*Id.*) By January 2016, Popailo's base salary was increased to $55,000, which represented 100% (rather than 95%) of the pay for his position. (*Id.*) Plaintiff therefore essentially alleges that Popailo received 100% of his paycheck six months early.

Plaintiff alleges two Causes of Action: (1) that Defendants engaged in intentional gender discrimination when they "failed to title, compensate, and employ" Plaintiff as compared to Popailo, her similarly situated male predecessor, and (2) that Defendants engaged in intentional gender discrimination against her by selecting a "less qualified male" (i.e., Popailo) to manage the PAC. (Compl. ¶¶ 44–45.)

5

B.  Procedural History

Plaintiff filed her Complaint on July 31, 2019.  (Dkt. No. 1.)  On September 23, 2019, after receiving an extension, (Dkt. No. 22), Defendants filed their Answer, (Dkt. No. 23.)  On September 27, 2019, the case was referred for mediation.  (Dkt. No. 24.)  On June 1, 2020, after a being rescheduled several times, (*see* Dkt.), the mediation was held but was unsuccessful, (Dkt. No. 27).

On July 17, 2020, Defendants filed a Motion to Disqualify Plaintiff's counsel, Michael Howard Sussman ("Sussman").  (Dkt. No. 31.)  On August 17, 2020, Plaintiff filed her Opposition to the Motion to Disqualify.  (Dkt. No. 32.)  Defendants filed their Reply on September 9, 2020.  (Dkt. No. 34.)  Following an Order from the Court, (Dkt. No. 35), Plaintiff filed supplemental materials on October 19, 2020, (Dkt. No. 37), and Defendants filed supplemental materials on October 27, 2020, (Dkt. No. 38).  On February 25, 2021, the Court issued an Opinion and Order denying Defendants' Motion to Disqualify.  (Dkt. No. 39.)

After the Parties completed discovery, Defendants filed a pre-motion letter outlining the grounds for their anticipated Motion for Summary Judgment on November 5, 2021.  (Dkt. No. 51.)  Plaintiff replied on November 9, 2021.  (Dkt. No. 52.)  On December 8, 2021, the Court held a pre-motion conference, during which it adopted a briefing schedule for Defendants' Motion.  (Dkt. No. 55.)  After receiving an extension, (Dkt. No. 57), Defendants filed their Motion for Summary Judgment and accompanying papers on January 28, 2022.  (Dkt. Nos. 58–61.)  Plaintiff filed her Opposition and accompanying papers on February 18, 2022.  (Dkt. Nos. 62–65.)  Defendants filed their Reply and accompanying papers on March 4, 2022.  (Dkt. Nos. 66–67.)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cnty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

 "However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations [are] correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions, . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (quotation marks omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006) ("[I]t is the law of this Circuit that summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (citation and quotation marks omitted)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (citation omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quotation marks omitted)). Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F.

Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "where each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court").  And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment."  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003); *see also id.* at 290 (holding that "[t]he credibility of [the plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

### B.  Analysis

#### 1.  Timeliness

As an initial matter, Defendants argue—and Plaintiff does not appear to dispute—that many of the allegations that Plaintiff makes with respect to her gender discrimination claims are untimely.  (*See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 12–13 (Dkt. No. 60); *see also generally* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") (Dkt. No. 62).)

Claims under § 1983 for employment discrimination are subject to a three-year statute of limitations.  *See Colon v. City of New York*, No. 19-CV-10435, 2021 WL 4943552, at *11 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, 2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021); *Isbell v. City of New York*, 316 F. Supp. 3d 571, 585 (S.D.N.Y. 2018); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011).[2]  Plaintiff filed her complaint on

---

[2] There is an exception for "continuing violations."  Under the continuing-violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001 (quotation marks and citation omitted)); *see also Hampton v. Wilkie*, 554 F. Supp. 3d 512, 521 (E.D.N.Y. 2021) (same).  However, the Supreme Court has "identified the following

July 31, 2019.  (*See* Dkt.)  Thus, any events in Plaintiff's Complaint that occurred prior to July 31, 2016 are untimely, and the Court will therefore consider those events only as background evidence.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (in evaluating whether summary judgment was appropriate on timely claims, the district court properly considered earlier employment actions as "background evidence" (quotation marks omitted)).  Thus, to the extent that any of Plaintiff's gender discrimination claims rely on events occurring prior to July 31, 2016, such as the events that Plaintiff alluded to as the reason for her resignation, (*see* Pl.'s 56.1 ¶ 27), those claims are dismissed as untimely.  Additionally, as discussed below, Plaintiff's gender discrimination claim based on the theory that she was paid unequally to Popailo is also dismissed as untimely.  *See infra* Part II.B.2.a.i.

## 2.  Gender Discrimination

Even if all the allegations in Plaintiff's Complaint were timely, Defendants would still be entitled to summary judgment on both of Plaintiff's gender discrimination claims.

---

'discrete' employment actions which are not subject to the continuing violation exception: termination, failure to promote, denial of transfer, or refusal to hire."  *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 526 (S.D.N.Y. 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)), *aff'd*, 76 F. App'x 366 (2d Cir. 2003); *see also Taylor v. City of New York*, 207 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (holding that "[t]he continuing violation doctrine is [] not applicable to [the plaintiff's] failure to hire and failure to promote claims").  "Similarly, the Second Circuit has held that the denial of an increased pay grade does not amount to a continuing violation."  *Staff*, 233 F. Supp. 2d at 526 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)); *see also DeJesus v. Starr Tech. Risks Agency, Inc.*, No. 03-CV-1298, 2004 WL 2181403, at *6 (S.D.N.Y. Sept. 27, 2004) ("Completed acts or discrete incidents such as termination or resignation, job transfer, discontinuance of a job assignment, denial of a promotion or increased pay grade, or failure to compensate adequately are not acts of a continuing nature and, thus, cannot be the premise of a continuing violation claim." (citation omitted)).  Because Plaintiff's gender discrimination claims are rooted in theories of failure to promote and denial of pay/title upgrade, the continuing violation doctrine does not apply to her claims.

"Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims." *Stoutenger v. City of Fulton*, No. 21-CV-563, ___ F. Supp. 3d ___, 2022 WL 1909918, at *14 (N.D.N.Y. June 2, 2022) (quotation marks and citation omitted). Claims of discrimination under both Title VII and § 1983 are analyzed pursuant to the familiar three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.*

"Under this framework, at the summary judgment stage, a plaintiff must first demonstrate a prima facie case of employment discrimination by showing that: '(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Farmer v. Shake Shack Enterprises LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (italics and footnote omitted) (quoting *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019)); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (articulating the same elements). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998)). "The burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct," and "[u]pon such a showing, the plaintiff must demonstrate that the reasons offered by the defendant are a mere pretext for discrimination." *Farmer*, 473 F. Supp. 3d at 324 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015)); *see also Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) ("[T]he final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." (citation omitted)).

a. Prima Facie Case

i. Failure to Upgrade Title/Pay

As noted, to establish a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

Defendants do not appear to dispute that Plaintiff satisfies the first and second elements—i.e., that Plaintiff, who is a woman, is a member of a protected class, and that she was qualified for the positions of Clerk, Recreation Coordinator, and Recreation Director. (*See* Defs.' Mem. 15–20.) However, Defendants argue that Plaintiff cannot demonstrate the third and fourth elements—i.e., that she suffered an adverse employment action and that there is evidence giving rise to an inference of discrimination. (*See id.*)

Starting with the third element, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (emphasis and quotation marks omitted). That change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quotation marks omitted). "Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 211 (E.D.N.Y. 2014) (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

13

Plaintiff argues that when she assumed responsibility over the newly severed Recreation Department in 2017, her title remained Recreation Coordinator and her requests to become a salaried employee were denied.  (*See* Pl.'s Opp'n 17, 19–20.)  Although failures to upgrade job titles or salaries can constitute adverse employment actions, *see Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 249 (S.D.N.Y. 2009) (holding that failure to upgrade the plaintiff's job title to "manager," for purposes of the summary judgment motion, was an adverse employment action); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001) (concluding that a denial of raise in salary was an adverse employment action), *aff'd in part*, *appeal dismissed in part on other grounds*, 51 F. App'x 55 (2d Cir. 2002); *Magilton v. Tocco*, 379 F. Supp. 2d 495, 506 (S.D.N.Y. 2005) (same), the record belies Plaintiff's assertions.  First, Plaintiff concedes in her deposition that her request to upgrade her title from Recreation Coordinator to Recreation Director was eventually granted:

Q:      . . . [Y]ou mentioned you became the [R]ecreation ]D]irector?

A:      Correct.

Q:      And was that the [R]eceration [D]irector of the Recreation Department?

A:      Correct.

Q:      And did you request that change in title or apply for it?

A:      I requested a change in title, yes.

Q:      And was your request made in 2017 or 2018?

A:      2017, 2018.

Q:      And why did you request that change of title?

A:      Because now, I was the department head; and now, I had the new senior center/recreation facility to manage, and I was told I was head of the department.

Q:      Who told you that?

14

> A:      Alex Jamieson.  It's in the minutes.
>
> Q:      And was your request for a change of title granted?
>
> A:      Eventually.
>
> Q:      And that was sometime in 2018?
>
> A:      Correct.

(Decl. of Cristina A. Soller in Supp. of Defs.' Mot. for Summ. J. ("Soller Decl.") Ex. B ("Pl.'s Dep.") 88:21–89:24 (Dkt. No. 59-2).)  Because Plaintiff received the title upgrade that she requested, this cannot be considered an adverse employment action.  *See Rosado v. City of New York*, No. 18-CV-9760, 2020 WL 2836481, at *5 (S.D.N.Y. June 1, 2020) (finding that the plaintiff's delay in receiving a promotion was not an adverse employment action where the "[p]laintiff does not allege that anyone else received his desired promotion"); *Karam v. County of Rensselaer, New York*, No. 13-CV-1018, 2016 WL 51252, at *10 (N.D.N.Y. Jan. 4, 2016) (noting that "a delay in granting an employee's benefits, standing alone, is not an adverse employment action"); *Jeffrey v. Montefiore Med. Ctr.,* No. 11-CV-6400, 2013 WL 5434635, at *20 (S.D.N.Y. Sept. 27, 2013) ("[I]t is a *failure* to promote, not a failure to *quickly* promote that makes an employment action materially adverse." (emphases in original)).

Second, although Plaintiff's request to become a salaried employee was denied, she received an annual pay increase both in 2017 and in 2018.  In Plaintiff's deposition, she stated:

> Q:      [I]n 2017, did you receive an annual increase in your pay that year that was approved by the town?
>
> A:      Yes.
>
> . . .
>
> Q:      So, [in 2018], you did get the pay increase you requested in addition to the annual pay increase?
>
> A:      No; I received no increase.  I requested one; received zero increase, other than the annual that every other person receives.

(*Id.* at 85:2–4, 98:11–17.)  That Plaintiff was not converted to a salaried employee when she became the Recreation Director is also tempered by the fact that Plaintiff's duties remained the same apart from overseeing the new senior center that was being built.  (*See generally id.* at 86–87.)

Even assuming that Plaintiff has established that the delay in changing her title and the denial of her request to become a salaried employee were adverse employment actions, she cannot establish the fourth element of a prima facie case—that the circumstances give rise to an inference of gender discrimination.  "A plaintiff may raise such an inference by showing that the employer subjected h[er] to disparate treatment, that is, treated h[er] less favorably than a similarly situated employee outside h[er] protected group."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see also Summit v. Equinox Holdings, Inc.*, No. 20-CV-4905, 2022 WL 2872273, at *9 (S.D.N.Y. July 21, 2022) (same).  "If a plaintiff relies on evidence that [s]he was treated less favorably than employees outside of his protected group to raise an inference of discriminatory intent, [s]he must establish that [s]he was 'similarly situated in all material respects' to those employees."  *Smith v. City of New York*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019) (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  For example, "[a]n employee is similarly situated to other employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Senese v. Longwood Cent. Sch. Dist.*, 330 F. Supp. 3d 745, 767 (E.D.N.Y. 2018) (quoting *Graham*, 230 F.3d at 40).

Here, Plaintiff fails to show that Defendants treated her less favorably than a similarly situated male.  First, Plaintiff compares herself to Popailo, (*see, e.g.*, Pl.'s Opp'n 19–20), but Plaintiff and Popailo were not similarly situated.  This is because Popailo was Director of both

the Parks *and* Recreation Departments, but Plaintiff was only the Director of the Recreation

Department.  (*See, e.g.*, Defs.' 56.1 ¶¶ 12, 14.)  In his capacity as Director of the Parks and

Recreation Departments, Popailo performed tasks related to recreation programs in addition to

physical labor to upkeep the Town's parks and facilities.  (*See id.* ¶ 12.)  These duties included:

> [p]lann[ing], organiz[ing], and direct[ing] [] recreation programs and activities;
> [p]lann[ing] athletic and sports activities . . . ; [s]chedul[ing] and direct[ing]
> playground activities, dance programs, arts and crafts, etc.; [p]lann[ing] and
> promot[ing] special activities and events; [p]repar[ing] publicity and news releases;
> . . . [m]aintain[ing] control over equipment to insure safe operating conditions;
> [obtaining] materials and supplies; [and] keep[ing] records on finances, recreation
> activities, facilities, public relations, etc.

(Soller Decl. Ex. G ("Parks & Recreation Director Description") (Dkt. No. 59-7)).  As

Popailo described it in his deposition, "I did the basketball program, I did the parks, I

made sure that the grasses were cut, I enhanced the parks with parkland money and

fielded any kind of questions that anybody had in the Town about Parks and Rec."

(Soller Decl. Ex. C ("Popailo Dep.") 49:2–7 (Dkt. No. 59-3).)  And as Jamison stated in

his deposition, "This job was about physical labor.  It was about getting on a lawnmower

and taking care of our parks and our grounds and the little league fields."  (Soller Decl.

Ex. D ("Jamison Dep.") 39:16–19 (Dkt. No. 59-5).)  By contrast, when Plaintiff became

the Recreation Director, she retained the duties that she had already been performing as

Recreation Coordinator, except that she also started overseeing the new senior center,

which was being built.  (*See generally* Pl.'s Dep. 86–87.)  These duties included:

> [a]ssist[ing] the [Town] [B]oard or [the Parks and Recreation [C]ommission in
> coordinating [] recreation program[s] or specific activities; . . . [a]ssign[ing] hours,
> work locations and activities to subordinate recreation staff; conduct[ing] public
> relation activities . . . ; . . . [k]eeping records of equipment, materials and supplies;
> inspect[ing] equipment for safety and proper maintenance; [m]aintain[ing]
> discipline and enforcing regulations; [and] keep[ing] records of recreation
> activities.

(Soller Decl. Ex. F ("Recreation Coordinator Description") (Dkt. No. 59-6)).  Notably, Plaintiff's duties did not include any of the physical labor, maintenance, or upkeep required to run the Parks Department.  Thus, because Popailo was responsible for two departments, one of which required a substantially different skillset, and Plaintiff was responsible for just one department the Court finds that Popailo and Plaintiff were not substantially similar for purposes of finding an inference of discrimination.  *See Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 210 (D. Conn. 2017) ("[T]o be 'similarly situated,' employees must be substantially similar as to specific work duties, education, seniority, and performance history . . . ." (ellipses in original) (quotation marks and citation omitted)); *see also Feinerman v. T-Mobile USA*, No. 08-CV-3517, 2010 WL 331692, at \*10 (S.D.N.Y. Jan. 28, 2010) (finding that the plaintiff and her co-worker were not similarly situated where their "job description and responsibilities" were "not similar in any respect"); *Dorcely v. Wyandanch Union Free School Dist.*, 665 F. Supp. 2d 178, 201 (S.D.N.Y. 2009) (finding that the plaintiff was not similarly situated to other employees when the "[p]laintiff [did] not set forth evidence that those employees' responsibilities and seniority were similar"); *Canales–Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 505 (S.D.N.Y. 2009) (finding that a the plaintiff, a Senior Court Clerk, was not similarly situated to a Senior Court Officer where the Senior Court Officer had "significantly different duties and responsibilities" than the plaintiff); *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 598 (E.D.N.Y. 2007) (finding that plaintiff was not similarly situated to the other employees where he "failed to offer competent evidence from which any reasonable trier of fact could infer that any of the three individuals . . . had substantially similar job responsibilities"); *Querry v. Messar*, 66

18

F. Supp. 2d 563, 572 (S.D.N.Y. 1999) (finding that the plaintiff, a police officer, was not similarly situated to a police sergeant because "the sergeant was of higher rank than the plaintiff and his duties were different from plaintiff's").

Second, Plaintiff compares herself to Taggart, but Taggart was not treated differently than Plaintiff with respect to title or salary. After Popailo was terminated in 2017, the Parks and Recreation Departments were split into two departments: Taggart was hired to run the Parks/Grounds and Maintenance Department, and Plaintiff was selected to run the Recreation Department. (Defs.' 56.1 ¶ 14.) According to excerpts from Town meeting minutes, both Taggart and Plaintiff were hourly employees. (*See* Soller Decl. Ex. L, at 60 ("Town Meeting Minutes Excerpts") (Dkt. No. 59-12).) And, as of January 3, 2018, neither Plaintiff nor Taggart held the title of Director: Plaintiff's title was Recreation Coordinator and Taggart's title was Building Maintenance Mechanic. (*See id.*) Additionally, as of January 2018, Plaintiff was paid *more* than Taggart: Plaintiff earned $32/hour and Taggart earned $27.81/hour. (*See id.*) And as of January 9, 2019, Plaintiff had received her new title of Recreation Director, while Taggart's title was still Building Maintenance Mechanic. (*See id.*) Thus, Plaintiff cannot show that she was treated less favorably than Taggart.

In sum, Plaintiff fails to identify a male comparator who was treated less favorably than she was treated. "Without this necessary evidence of similarly situated comparators, Plaintiff cannot meet [her] burden of demonstrating circumstances that give rise to an inference of [gender] discrimination." *Senese*, 330 F. Supp. 3d at 767 (second alternation in original)

(quotation marks omitted).  Because Plaintiff fails to demonstrate an inference of discrimination, she cannot establish a prima facie case of gender discrimination based on unequal title/pay.[3]

### ii.  Failure to Promote

Plaintiff next alleges that Defendants' decision to hire Popailo—and not Plaintiff—as Recreation Director for the PAC was based on Plaintiff's gender.  Defendants do not appear to dispute that Plaintiff has met the first three elements of a prima facie case.  (*See* Defs.' Mem. 20–23.)  That is, Defendants do not appear to dispute that Plaintiff is a member of a protected class,

---

[3] Plaintiff also alleges that "the Town knowingly applied the 80% rule overwhelmingly to its female employees, designating them as clerks regardless of their actual function."  (Pl.'s Opp'n 17.)  The "80% rule" appears to refer to a practice by which the Town initially paid full-time employees 80% of their full income, and then increased their salaries by 5% every six months, such that they received 100% of their full income after two years.  (*See, e.g.*, Defs.' 56.1 ¶ 6.)

Plaintiff specifically cites three male comparators: Popailo, Taggart, and Kristofer Grohl ("Grohl").  With respect to Popailo, Plaintiff's allegation is timed-barred.  According to Plaintiff, Popailo initially received 80% of his salary and received 5% increases every six months, but he received 100% (rather than 95%) of his salary by January 2016.  (*See* Pl.'s 56.1 ¶ 5.)  Thus, according to Plaintiff, the Town increased Popailo's salary to 100% prematurely.  (*See id.*)  However, as discussed above, January 2016 is outside the limitations period.  *See supra* II.B.1.  Thus, the Court will not consider this allegation.

With respect to Grohl and Taggart, Plaintiff alleges that they received 100% of their salaries upon their hire, rather than the 80% that Plaintiff received.  (*See* Pl.'s 56.1 ¶¶ 1, 16.)  As for Grohl, who was a laborer in the Parks Department, (*see* Defs.' 56.1 ¶ 17), Plaintiff offers no evidence—other than an allegation in her Complaint—that he was paid 100% of his salary upon hire, (*see* Pl.'s 56.1 ¶ 1 (citing Compl.)).  *See Henek v. CSC Holdings, LLC*, 449 F. Supp. 3d 35, 38 n.2 (E.D.N.Y. 2020) ("The complaint, of course, is not evidence with which a party can oppose a motion for summary judgment.") (collecting cases).  Additionally, Taggart and Grohl's duties differed significantly from Plaintiff's, making them inappropriate comparators for this purpose.  That is, Taggart's title was the Building Maintenance Mechanic, and his duties included "a variety of tasks in connection with the maintenance and repair of buildings and equipment."  (*See* Soller Decl. Ex. M. ("Building Maintenance Mechanic Description") (Dkt. No. 59-13).)  And Grohl was a laborer in Taggart's department, whose duties included "mow[ing] the lawn and helping [Taggart].")  (*See* Pl.'s Dep. 107.)  Even Plaintiff conceded in her deposition that Taggart and Grohl had different titles, positions, duties, and responsibilities than she did.  (*See id.* at 170.)  Finally, Plaintiff does not dispute that her salary was actually *higher* than both Taggart and Grohl's salaries.  (*See* Defs.' 56.1 ¶¶ 16, 18; *see also* Town Meeting Minutes Excerpts.)  These allegations therefore fail.

that she was qualified for the PAC Recreation Director position, and that she suffered an adverse employment action when she was not chosen for that position.  (*See id.*)  The Court will therefore limit its analysis to the fourth element, i.e., whether the Town's decision to promote Popailo over Plaintiff raises an inference of discrimination.

"Where, as here, the plaintiff alleges that she was not promoted to [a] position[] that w[as] eventually filled by [an]other individual[], she may raise an inference of discriminatory intent by showing she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.  In the context of a promotion, that means comparing the qualifications of the plaintiff with those of the person promoted."  *Wheeler v. Bank of New York Mellon*, 256 F. Supp. 3d 205, 217 (N.D.N.Y. 2017) (alterations, citations, and quotation marks omitted).  Here, Defendants have demonstrated that Popailo possessed qualifications that, in the estimation of the Town Board, made him a better fit for the PAC Recreation Director role.  (*See* Defs.' 56.1 ¶ 24.)  These qualifications included his prior experience running a comedy club, as well as his experience doing maintenance and upkeep work as Director of the Parks and Recreation Department.  (*See id.*)  As Wensley stated in his decision, "I think the presumption was that, you know, [Popailo] was better suited to manage th[e] [PAC] facility and leverage some of the connections that he had established [in the entertainment business]."  (Soller Decl. Ex. K ("Wensley Dep.") 59:13–16 (Dkt. No. 59-11).)  In her deposition, Smith corroborated the fact that, during Popailo's interview for the position, the Town Defendants asked about Popailo's entertainment experience and willingness to perform physical labor to ensure the upkeep of the PAC.  (*See* Soller Decl. Ex. J 34:17–20 (Dkt. No. 59-10).)   Plaintiff, by contrast, had more limited experience in the entertainment business, and she had no experience with physical labor to ensure the maintenance and upkeep of the Town's facilities and parks.  (*See* Defs.' 56.1 ¶ 26.)

21

Popailo's resume further demonstrates that he had experiencing organizing "all comedy acts and special events for Jester's Comedy Club," while Plaintiff's resume does not mention any experience in the entertainment business. (*Compare* Soller Decl. Ex. O (Dkt. No. 59-15) *with* Soller Decl. Ex. R (Dkt. No. 59-18).)  Where, as here, "a decision to promote one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn."  *Morales v. Bottling Grp., LLC*, 374 F. Supp. 3d 257, 271 (W.D.N.Y. 2019) (citation and quotation marks omitted), *aff'd sub nom*. *Campbell v. Bottling Grp., LLC*, 814 F. App'x 630 (2d Cir. 2020).  Further,

> [t]he point . . . is not to conduct a de novo review of [Popailo] and [Plaintiff's] qualifications, nor to second guess [the Town's] assessment. . . .  The question is whether selection of a particular candidate for a position, standing alone and in light of his or her qualifications, justifies an inference that [gender] was at least part of the reason for the selection.  In this case, it does not.

*Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 487 (E.D.N.Y. 2016) (citations omitted), *aff'd*, 713 F. App'x 53 (2d Cir. 2017); *see also id.* ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001))).

However, Plaintiff proffers evidence raising the inference of pretext—that is, that the Town's decision to hire Popailo over Plaintiff because he was more qualified for the role was pretextual, given that Popailo had been terminated just two years before for making disturbing racist and sexist comments.  (*See* Pl.'s Opp'n 21.)  Specifically, Jamison stated in his deposition that, during an Association of Towns conference, Popailo posted a video on Facebook in which he used racial slurs and curse words.  (*See* Jamison Dep. 80:8–15.)  Jamison also became aware that Popailo also allegedly made racist and sexist comments during the conference, which other

Town Board members witnessed and reported to Jamison.  (*See generally id.* at 82–84.)  After investigating the incident, the Town Board voted unanimously to terminate Popailo's employment.  (*See generally id.* at 88–94.)  In *Anderson v. N.Y.C. Health & Hosps. Corp.*, the plaintiff argued that the defendants' reason for promoting another employee over the plaintiff were pretextual because the other employee had an open disciplinary action against her and the plaintiff did not.  *See* No. 16-CV-1051, 2020 WL 2866960, at *18 (S.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 1528101 (S.D.N.Y. Mar. 31, 2020).  The Court agreed with plaintiff, finding that the "evidence of pretext is strong."  *Id.*  The court further found that "[b]ased on the record as a whole, and viewing the evidence in the light most favorable to [the] [p]laintiff, it is possible a trier of fact might conclude that the [defendants'] proffered reason for hiring [the other employee] and not [the] [p]laintiff was a pretext for discrimination." *Id.*; *see also Eldred v. Consol. Freightways Corp. of Delaware*, 898 F. Supp. 928, 936–37 (D. Mass. 1995) (finding that "the only explanation for [the] defendant's decision" to rehire another employee over the plaintiff was "plaintiff's gender," where the other employee had a "horrendous employment record").  Here, similarly, "Plaintiff has demonstrated that a reasonable jury may find that the reasons offered by [Defendants for hiring Popailo over Plaintiff] were not credible."  *DeSio v. Singh*, No. 19-CV-3954, 2021 WL 4449314, at *20 (S.D.N.Y. Sept. 28, 2021).  The Court therefore finds that Plaintiff raises a genuine dispute of material fact as to whether the Town's decision to hire Popailo over Plaintiff was pretextual.  Defendants are therefore not entitled to summary judgment on Plaintiff's failure to promote claim.[4]

---

[4]  Defendants also argue that the Individual Town Defendants are entitled to legislative immunity, (Defs.' Mem. 13–15), and qualified immunity, (Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Reply) 9–10 (Dkt. No. 66)).  However, because the Court finds that Defendants are entitled to summary judgment on most of Plaintiff's gender discrimination

III. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment is granted in part and denied in part. Specifically, Defendants' Motion is granted on all claims except for Plaintiff's failure to promote claim. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 58.)

SO ORDERED.

DATED:          September 23, 2022
                White Plains, New York

                                            _____
                                            KENNETH M. KARAS
                                            UNITED STATES DISTRICT JUDGE

---

claims, the Court need not consider this argument. Similarly, because the Court denied Defendants summary judgment on Plaintiff's failure to promote claim, the Court accordingly finds that Defendants are not entitled to qualified immunity on that claim at this stage. *See Brown v. Off. of State Comptroller*, 456 F. Supp. 3d 370, 405 (D. Conn. 2020) ("[The defendant] is not entitled to qualified immunity on [the plaintiff's] surviving claims."); *see also White v. Dep't of Corr. Servs.*, 814 F. Supp. 2d 374, 394 (S.D.N.Y. 2011) ("The right to be free from gender discrimination was clearly established at the time of the incidents in question.".)